IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JOSE NIEVES-RAMOS,**           :
                                         :
           **Petitioner**           :           **CIVIL NO. 1:CV-10-1730**
                                         :
    **v.**                         :           **(Judge Rambo)**
                                         :
**GERALD L. ROZUM, *et al.*,**      :
                                         :
          **Respondents**       :

## M E M O R A N D U M

Petitioner Jose Nieves-Ramos, an inmate currently incarcerated at the State Correctional Institution in Somerset, Pennsylvania ("SCI-Somerset"), initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. The matter was subsequently transferred to this court. Petitioner is challenging his 2007 judgment of sentence imposed by the Court of Common Pleas of Dauphin County, Pennsylvania ("trial court" or "Dauphin County court"). For the reasons that follow, the petition will be denied.

I.   **Background**

On March 20, 2008, following his pleas of *nolo contendere*[1] to one count each

of rape of a child, indecent assault of a person less that 13 years of age, corruption of

minors, and unlawful conduct with a minor - sexual offenses, the Dauphin County

court sentenced Petitioner to an aggregate term of imprisonment of six to twelve

years, followed by eight years of probation, plus costs.  (Doc. 17-5, Ex. B.)  As stated

by the Pennsylvania Superior Court, Petitioner's pleas and sentence followed an

incident in November 2006 wherein Petitioner, 20-years old at the time, engaged in

sexual intercourse with a 12-year old girl.  (Doc. 17-6 at 71, Ex. L, *Commonwealth v.*

*Nieves-Ramos*, No. 1179 MDA 2009 (Pa. Super. Ct. Mar. 26, 2010) (unpublished

memorandum).)  No direct appeal was filed.

On July 17, 2008, Petitioner filed a *pro se* petition for relief under

Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann.

§§ 9541 *et seq*.  (Doc. 17-5, Ex. C.)  The Dauphin County court, now sitting as PCRA

court, appointed counsel for Petitioner.  (Doc. 17-6 at 72, Ex. L.)  The PCRA court

held an evidentiary hearing on December 9, 2008.  (Doc. 17-5, Ex. E.)  On February

27, 2009, Petitioner's appointed counsel petitioned to withdraw based on his belief

---

[1] Petitioner entered his plea on October 19, 2007.  (*See* Doc. 17-5, Ex. A.)

that the issues being raised were without merit.  (Doc. 17-5, Ex. F.)  On April 24, 2009, the PCRA court permitted counsel to withdraw and stated its intention to dismiss the PCRA petition.  (Doc. 17-5, Ex. G.)  On June 12, 2009, the PCRA court dismissed the PCRA petition.  (Doc. 17-5, Ex. I.)  Petitioner timely appealed.  (*See* Doc. 17-6 at 72, Ex. L.)  On March 26, 2010, the Superior Court of Pennsylvania affirmed the denial of PCRA relief.  (Doc. 17-6, Ex. L.)

Following these proceedings in state courts, Petitioner timely filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania on June 28, 2010, without an accompanying filing fee or application for leave to proceed *in forma pauperis*.  (Doc. 1.)  On July 9, 2010, the Western District court issued an order closing the case, but advised Petitioner that he may reopen the case by filing the proper fee or submitting an application to proceed *in forma pauperis*.  (Doc. 2.)  On July 21, 2010, Petitioner resubmitted his habeas petition with the proper filing fee.  (Doc. 3.)  Thereafter, by order issued on August 18, 2010, the court transferred the matter to this court.  (Doc. 9.)  After Petitioner filed his Notice of Election, (Doc. 13), by order dated October 21, 2010, this court directed Respondents to file an answer to the petition, (Doc. 14).

Respondents filed a response to the habeas petition on November 3, 2010.  (Doc. 17.)

As Petitioner has not filed a traverse, this matter is ripe for disposition.


**II.**     **Standard of Review - AEDPA Merits Review**[2]

Section 2254(d) of Title 28 of the United States Code provides, in pertinent

part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law, "it is

not sufficient for the petitioner to show merely that his interpretation of Supreme

Court precedent is more plausible than the state court's; rather, the petitioner must

demonstrate that Supreme Court precedent *requires* the contrary outcome."  *Matteo v.*

---

[2]  Typically, before a federal court can review the merits of a state prisoner's habeas petition, the court must first determine whether the petitioner has met the requirements of the doctrines of exhaustion and procedural default.  However, because Respondents have conceded that Petitioner's petition is timely and his claims properly exhausted, (*see* Doc. 17-2 at 4), a discussion addressing whether the merits of the petition is precluded by the one-year federal limitations period set forth in 28 U.S.C. § 2244(d) is not necessary.

*Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999) (emphasis in original).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 890.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2000).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction."  *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[3]).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-10.

---

[3]  "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the state court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

Further, the United States Supreme Court has clarified the test a district court must apply before granting relief where the court finds constitutional error:

> [I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

*Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).  Thus, even if the court concludes that constitutional error occurred in the state court, the court may not grant relief unless the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 631; *see also Bond v. Beard*, 539 F.3d 256, 276 (3d Cir. 2008).

## III.   Discussion

In his petition, Petitioner makes the following claims: (1) counsel was ineffective for failing to file a direct appeal; and (2) counsel was ineffective for failing to withdraw Petitioner's *nolo contendere* pleas because they were not entered into knowingly, intelligently, or voluntarily.  (Doc. 3.)  Prior to discussing these claims,

7

the court will set forth the standard for reviewing ineffective assistance of counsel

claims.

### A.  <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment guarantees an accused in a criminal prosecution the right

to assistance of counsel for his defense.  The applicable federal precedent for

ineffective assistance claims is the well-settled two-prong test established by the

United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See*

*also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (setting out the *Strickland* test);

*Williams*, 529 U.S. at 390-91 (same).  The first prong of the *Strickland* test requires a

defendant to establish that his attorney's representation fell below an objective

standard of reasonableness by committing errors so serious that he or she was not

functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466

U.S. at 688; *Wiggins*, 539 U.S. at 521.  It follows that when a petitioner claims that his

counsel failed to raise a claim that the court determines to be meritless, habeas relief

under *Strickland* is not available.  *See Strickland*, 466 U.S. at 691 (failure to pursue

"fruitless" claims "may not be challenged as unreasonable"); *see also United States v.*

*Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) (stating counsel cannot be deemed

ineffective for failing to raise a meritless claim).  A court must indulge a "strong

8

presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 688-89, 690-92.  The question is not whether counsel did not err, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place of counsel's conduct. *Id.*  To that end, a court must conduct an objective review of counsel's performance measured for reasonableness under prevailing professional norms, including a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time. *Id.* at 686; *Wiggins*, 539 U.S. at 522-27; *see also Bobby v. Van Hook*, — U.S. —, 130 S. Ct. 13, 16-20 (2009).

The second prong of *Strickland* requires a petitioner to show that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  This standard "is not a stringent one;" it is less demanding than the preponderance standard. *Baker v. Barbo*, 177 F.3d 149, 154 (3d

Cir. 1999).  Further, a reviewing court need not determine whether counsel's performance was deficient before considering whether the petitioner suffered any prejudice as a result of the alleged deficiency.  *Strickland*, 466 U.S. at 697.  If it is easier to dispose of an ineffectiveness claim for lack of requisite prejudice, that course should be followed.  *Id.*

In addition, the reviewing court must evaluate counsel's performance in light of the totality of the evidence.  *Strickland*, 466 U.S. at 695-96; *see also Jacobs v. Horn*, 395 F.3d 92, 106-07 (3d Cir. 2005).  It is the petitioner's burden to establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 697; *see also Jacobs*, 395 F.3d at 102.

At the time the state courts reviewed the claims that Petitioner's counsel was arguably ineffective, *Strickland*'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims.  Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the *Strickland* test.  *See, e.g., Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987).  The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*.  *Jacobs*, 395 F.3d at 107 n.9; *Werts*, 228

10

F.3d at 204. Thus, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland*. *Jacobs*, 395 F.3d at 107 n.9; *Werts*, 228 F.3d at 204. Further, under § 2254(d)(2), the relevant inquiry is whether the state court made unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel. *Bond*, 539 F.3d at 279.

Finally, Petitioner's claims of ineffective assistance of appellate counsel must be examined under the same *Strickland* standards cited above: 1) whether counsel's performance was unreasonable; and 2) whether counsel's unreasonable performance actually prejudiced the defense. *Strickland*, 466 U.S. at 687. If a court finds no merit in a claim of ineffective assistance by trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal. *See United States v. Cook*, 45 F.3d 388, 392-93 (10th Cir. 1995) ("When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.") (citations and quotations omitted).

**B.      Ineffective Assistance for Failing to File a Direct Appeal**

Petitioner first claims that counsel was ineffective for failing to file a

direct appeal.[4]  Upon review, the court finds Petitioner is not entitled to relief on this

claim.

In a claim of ineffective assistance of counsel for failure to file a direct appeal,

it is well-established that "a lawyer who disregards specific instructions from the

defendant to file a notice of appeal acts in a manner that is professionally

unreasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).  "Counsel's failure

to do so cannot be considered a strategic decision; filing a notice of appeal is a purely

ministerial task, and the failure to file reflects inattention to the defendant's wishes."

*Id*.  On the other hand, a defendant who explicitly instructs his attorney against filing

an appeal cannot later assert a valid ineffectiveness claim.  *Id*.  However, the United

States Supreme Court has declined to impose a constitutional mandate on counsel to

consult with his client regarding the filing of a direct appeal in all cases.  *Id*. at 479-

480.  Rather, it held only that "counsel has a constitutionally imposed duty to consult

with the defendant about an appeal when there is reason to think either (1) that a

rational defendant would want to appeal (for example, because there are nonfrivolous

---

[4]  During the time for filing a direct appeal, Petitioner was still represented by trial counsel.  Thus, Petitioner's claim here is essentially against his trial counsel.  (*See* Doc. 3.)

12

grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

In the instant case, Petitioner presented this claim of ineffectiveness to the state courts during PCRA review. The PCRA court heard testimony from both Petitioner and trial counsel during the evidentiary hearing conducted on December 9, 2008. (Doc. 17-5, Ex. E.) Petitioner testified that he sent a letter to his attorney with paperwork for a direct appeal in June 2008. (Doc. 17-5 at 41, Ex. E.) Trial counsel testified to the contrary, stating that not only did he not receive a request from Petitioner to file an appeal at the time of sentencing, (*id*. at 50), but also that he never received a letter from Petitioner thereafter indicating his desire to file a direct appeal, (*id*. at 48). After considering the totality of the circumstances, including this testimony, the PCRA court denied the claim as meritless. (Doc. 17-5 at 87, Ex. G.) Specifically, the court found that Petitioner "did not request an appeal within the time required to for an appeal to be filed on his behalf." (*Id*.) (citing Pa. R.A.P. Rule 903 ("the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken")). Further, the PCRA court also noted that Petitioner had pleaded guilty to a negotiated guilty plea and his appeal rights were explained to him in the written colloquy which he signed. (Doc. 17-5 at 87, Ex. G.) Accordingly, the

13

PCRA court held that trial counsel was not the cause of Petitioner's failure to file a direct appeal.  (*Id*.)

On appeal, the Pennsylvania Superior Court affirmed the PCRA court's decision.  (Doc. 17-6, Ex. L.)  Noting the PCRA court's reasoning, the Superior Court itself reasoned as follows:

> Upon review, we note that [Petitioner] is correct that he did not sign the portion of the written colloquy pertaining to his post-sentencing rights. Moreover, the trial court did not apprise [Petitioner] of his appellate rights following the imposition of sentence.  However, the record supports the PCRA court's determination that [Petitioner] was informed of his post-sentence appellate rights.  At the PCRA hearing, trial counsel testified, as follows:

> > Q:   [D]o you know whether or not [Petitioner] was given his post-sentence rights?

> > A:   I am not a hundred percent sure if they were read on the record but prior to all sentencings, I do go over post-sentencing rights.

> > Q:   Are they included in the colloquies that the defendants sign?

> > A:   Sometimes, yes.  Other times depending on the sentencing or not, I obviously when they initially sign my colloquy is the date of the guilty plea or the no contest plea.  If they are not going to be sentenced on that date, I don't have them sign it on that date, I explain it prior to sentencing.

14

> Q:    Do in instances where you have not explained to your
>       client his post-sentencing rights, will you have them
>       read on the record?
>
> A:    Absolutely, every time.  But I always explain post-
>       sentencing rights before.  But if I believe it would be a
>       possible issue down the line, I also have them read on
>       the record.

N.T., 12/9/2008, at 15-16.  Counsel also testified that [Petitioner] never requested an appeal at the time of sentencing and counsel never received a letter requesting an appeal. *Id*. at 12, 14-15.  As previously mentioned, an interpreter was present during the proceedings and during interviews with trial counsel.  In contrast, [Petitioner] testified on his own behalf at the PCRA hearing and stated that he sent a letter to counsel requesting an appeal in June 2008, despite being sentenced in March 2008. *Id*. at 5-6. However, as our standard of review requires, we will not disturb the PCRA court's determination that [Petitioner] was apprised of his post-sentencing rights and that he failed to request an appeal.

(Doc. 17-6 at 81-82, Ex. L.)

After reviewing the record, the court finds this decision to be neither contrary to nor an unreasonable application of federal law.  Were this court to hold an evidentiary hearing, perhaps we could come to a contrary factual determination and choose to credit Petitioner's testimony that he directed trial counsel to file an appeal.  However, to do so is not our province.  Pursuant to 28 U.S.C. § 2254(e)(1), the court must defer to the factual findings of the state courts unless Petitioner rebuts the presumption of correctness by clear and convincing evidence.  Relying on that presumption and

15

absent any proffer of contrary evidence by Petitioner, the court must accept that Petitioner did not make a timely request of trial counsel to file a direct appeal on his behalf.  Morever, the court notes that Petitioner has not even indicated to this court what claims counsel should have raised on direct appeal or whether those claims were clearly so nonfrivolous as to impose a constitutional duty on trial counsel to consult with Petitioner regarding an appeal.  Thus, habeas relief on this ground will be denied.

### C.  Ineffective Assistance for Failing to Withdraw *Nolo Contendere* Pleas

Petitioner also claims that his pleas of *nolo contendere* were not knowingly, intelligently, and voluntarily entered, and thus his counsel was ineffective for failing to withdraw them.  Upon review, the court finds that Petitioner is not entitled to relief on this claim.

The Fifth Amendment to the United States Constitution requires that waivers of constitutional rights must be made knowingly, intelligently, and voluntarily.  *See Brady v. United States*, 397 U.S. 742, 748 (1970).  Specifically, a defendant entering into a guilty plea must be informed of maximum sentences, mandatory fines, and mandatory minimum sentences.  *See Jamison v. Klem*, 544 F.3d 266, 278 (3d Cir. 2008).  In this case, before accepting his *nolo contendere* plea,[5] Petitioner reviewed

---

[5] Under Pennsylvania law, "[a]lthough the effect of a plea of *nolo contendere* is equivalent to a plea of guilty, the import of the plea is not the same.  In pleading *nolo contendere*;

and signed a written *nolo contendere* plea colloquy; he confirmed that he had an

opportunity to review the written plea colloquy with counsel prior to signing it; a

Spanish translator explained all of the terms of the plea agreement and written

colloquy and was present when it was signed; and, a Spanish interpreter was provided

to aid Petitioner at all proceedings.  (*See* Doc. 17-6 at 76-77, Ex. L.)

The Pennsylvania Superior Court reviewed Petitioner's invalid plea colloquy

claim under the following test:

> In order to ensure a voluntary, knowing, and intelligent plea, the trial
> court is required to ask the following questions in a plea colloquy:
>
>> 1) Does the defendant understand the nature of the charges
>> to which he or she is pleading guilty or *nolo contendere*?
>>
>> 2) Is there a factual basis for the plea?
>>
>> 3) Does the defendant understand that he or she has the right
>> to a trial by jury?
>>
>> 4) Does the defendant understand that he or she is presumed
>> innocent until found guilty?
>>
>> 5) Is the defendant aware of the permissible ranges of
>> sentences and/or fines for the offenses charged?

---

the defendant does not admit his guilt, but merely consents to being punished as if he were guilty."
*United States v. Poellnitz*, 372 F.3d 562, 568 (3d Cir. 2004) (citing *Commonwealth v. Gunter*, 771
A.2d 767, 773 (Pa. 2001) (Cappy, J., concurring)).

> 6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

(*Id*. at 75) (quoting *Commonwealth v. Pollard*, 832 A.2d 517, 522-23 (Pa. Super. Ct. 2003) (citing Pa. R. Crim. P. 590)).  Pennsylvania's test correlates with *Brady*'s command that a valid guilty plea is one that is voluntary, knowing, and intelligent.[6]  Thus, the plea colloquy test applied by the state court is not contrary to clearly established Supreme Court precedent.

After reviewing the record, the court cannot find that the Superior Court's decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  *See Matteo*, 171 F.3d at 891.  First, an objective evaluation of the state court's decision demonstrates that it was not an unreasonable determination of facts in light of the evidence.  Here, all six questions required under Pennsylvania law were addressed in the plea colloquy and were answered by Petitioner, either through the oral colloquy or written colloquy.  (Doc. 17-6 at 77-80, Ex. L.)  Further, at the guilty plea proceedings, when asked, "Do you understand that by signing this [written colloquy] you are indicating you understand everything in it,

---

[6]  Although the Superior Court did not cite *Brady* directly, "[a] state court decision is not contrary to . . . clearly established Federal law simply because the [state] court did not cite [applicable Supreme Court precedent]."  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

that you reviewed it with your attorney and that it is your intention to enter a plea of guilty to the charges pursuant to a negotiated plea agreement?" Petitioner, through his interpreter, answered in the affirmative.  (Doc. 17-5 at 7, Ex. A.)  Based upon the facts of record, the *nolo contendere* plea was in accordance with Pennsylvania law, and thus with *Brady*.  Second, the sentence was not an unreasonable application of *Brady* and its progeny because Petitioner was informed of the necessary requirements of a *nolo contendere* plea.  Specifically, the court explained to Petitioner, and he confirmed his understanding of, the fact that if he were to plead no contest, the court must treat that plea for sentencing purposes as if he had pleaded guilty.  (Doc. 17-5 at 9, Ex. A.)  The court also explained to Petitioner, and he confirmed his understanding of, the fact that if he were to plead no contest, it still counts as a conviction just as if he pleaded guilty or were found guilty.  (*Id.*)  Further, the court was presented with the written colloquy which set forth, and confirmed Petitioner's understanding of, the potential maximum punishments and penalties.  (*Id.* at 6-7; Doc. 17-5 at 79-81, Ex. F, Attach. C, *Nolo Contendere* Plea Colloquy.)  The written colloquy also set forth Petitioner's right to a jury trial in the alternative to pleading *nolo contendere*.  (Doc. 17-5 at 79-80, Ex. F.)  After reviewing the written colloquy and conducting an oral colloquy, the court accepted Petitioner's plea as knowing and voluntary.[7]  (*Id.* at 9.)  Upon review of the

---

[7]  Before the Superior Court, Petitioner also claimed that he was not advised during the oral colloquy or by written colloquy that the judge was not bound by the terms of any plea

record, the court concludes that Petitioner's *nolo contendere* pleas were constitutional pursuant to *Brady* and its progeny and his claim that the pleas were invalid is meritless.

Furthermore, an objective evaluation of the Superior Court's decision as to Petitioner's ineffectiveness claim demonstrates that it was not unreasonable.  As discussed above, there were no defects to Petitioner's *nolo contendere* pleas, and therefore any potential claim raised by Petitioner's counsel would have been without merit.  Because counsel cannot be ineffective for failure to raise a meritless claim, Petitioner's counsel is not ineffective for failing to challenge the constitutionality of the *nolo contendere* plea.  *See Saunders*, 165 F.3d at 253.  Accordingly, habeas relief on this ground will be denied.

IV.   **Conclusion**

---

agreement.  (*See* Doc. 17-6 at 79, Ex. L.)  In its decision, the court agreed that Petitioner was not apprised of this fact in either colloquy, but noted "that the trial court sentenced [Petitioner] precisely according to the terms of the plea agreement . . . .  As such, [Petitioner] fails to show how the failure to inform him that the trial court was not bound by the terms of the plea agreement caused him to enter unknowing or involuntary pleas."  (*Id*. at 79.)

Based on the foregoing determination that Petitioner's claims are without merit, the court will deny the petition for writ of habeas corpus.  (Doc. 3.)

The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of appealability because jurists of reason would not find it debatable that denial of the petition because Petitioner's claims are without merit is correct.

An appropriate order will issue.

   s/Sylvia H. Rambo        <br>
United States District Judge

Dated:  November 10, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JOSE NIEVES-RAMOS,**                :
                                      :
         **Petitioner**               :        **CIVIL NO. 1:CV-10-1730**
                                      :
      **v.**                          :        **(Judge Rambo)**
                                      :
**GERALD L. ROZUM,** *et al.*,        :
                                      :
         **Respondents**              :

# O R D E R

**AND NOW**, this 10th day of November, 2011, upon consideration of the

petition for writ of habeas corpus (Doc. 3), and for the reasons set forth in the

accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 3) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) There is no basis for the issuance of a certificate of appealability.  *See* 28

U.S.C. § 2253(c).

                          ___s/Sylvia H. Rambo_____
                          United States District Judge